UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Ernest H. Fudge

                              Plaintiff,

          v.                                          09-CV-0300

Town of Shandaken Police, Detective Fred Holland,
Officer in Charge William James McGrath, Police
Officer Kris Frisenda, District Attorney Donald
Williams, ADA Tracy Steeves, Gerald Van Loan,
and Dana Blackmon,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

          Plaintiff commenced the instant action pursuant to 42 U.S.C.§ 1983 asserting

claims of false imprisonment, malicious prosecution and false arrest.  Plaintiff's allegations

are based on separate arrests for arson, harassment, assault and burglary.  Presently before

the Court are Defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56

seeking dismissal of the Complaint in its entirety.

## I.       FACTS

          The following facts are taken from Defendants' properly supported statements of

material facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3).  Because Plaintiff has not

submitted a proper counter-statement of material facts, the facts set forth in Defendants'

statements of material facts are deemed to be true.  See N.D.N.Y.L.R. 7.1(a)(3).[1]

      a.       **January 2006 Arson Investigation**

On January 30, 2006, there was a fire at the Esopus Trailer Park in Phoenicia, New

York.  On that date, Defendant Detective Fred Holland and Defendant Officer-In-Charge

James McGrath interviewed Crystal Evans, Joanne Winne and Patrick Wood.  The witnesses

independently gave signed, written statements indicating that Plaintiff had expressed to them

that he was going to burn down Claudette Morgan's trailer.  The witnesses also stated that

Plaintiff was intoxicated, grabbed newspapers, and proceeded towards Morgan's trailer.

Shortly thereafter, the witnesses saw flames and Plaintiff in the vicinity of the fire.  During the

investigation, the Ulster County Fire Investigator, Christopher Worrad, informed Detective

Holland that he had ruled out all causes of accidental fire.  Additionally, a K-9 unit alerted to

the presence of accelerant on the Plaintiff's clothes.  Based on this information, Holland

arrested Plaintiff.

A Preliminary Hearing was conducted in the Town of Shandaken Justice Court to

determine whether there was reasonable cause to suspect that Plaintiff had committed a

felony.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff declined to present

evidence or call witnesses.  The court held that there was sufficient evidence suggesting

---

[1] Plaintiff was serviced with a Notice of the Consequences of Failing to Respond to a Summary Judgment Motion and a Pro Se notice specifically advising that "[i]f your opponent filed a motion for summary judgment. . . you must respond to [the] Statement of Material Facts by admitting and/or denying each fact asserted therein supported with a record citation.  If you do not so respond, the Court will deem that you have admitted your opponent's Statement of Material Facts, which could result in the Court viewing the facts very favorably to the opposing party.  L.R. 7.1(a)(3)."

reasonable cause to hold the Plaintiff on $50,000 bail and $100,000 bond for Grand Jury

proceedings.

      **b.**        <u>**August 23, 2006 Harassment Investigation**</u>

      On August 23, 2006, the owner of the Cobblestone Motel contacted the Town of

Shandaken Police Departmenet reporting a confrontation.  Defendant Police Officer Kris

Frisenda responded to the motel and interviewed Joanne Winne.  Winne told Officer

Frisenda that she wanted a protective order against Plaintiff and wished to press charges.

Frisenda returned to the police department where a written statement was prepared and

signed by Winne.  In her statement, Winne stated that Plaintiff "drove into the Cobblestone

Motel parking lot in an apparently intoxicated condition, confronted the complainant and her

boyfriend . . . and stated 'I'm going to beat the shit out of you again,' and then left the area. . .

."  Officer Frisenda then arrested Plaintiff and charged him with Harassment in the Second

Degree.

      **c.**        <u>**September 7, 2006 Assault**</u>

      On September 7, 2006, George Bolten and Michael Pampinella were assaulted by

six men.  Holland investigated the assault, including interviewing Bolten, Pampinella and

other witnesses.  Bolten provided a written statement identifying Plaintiff as one of the

assailants.  Bolten reported that Plaintiff approached him after the incident, introduced

himself, and apologized.  The other victim, Pampinella also identified Plaintiff as one of the

men who attacked Bolten.  Robin Pampinella, the victim's wife, also identified Plaintiff as

being involved.  Other witnesses provided information suggesting that Plaintiff was involved

in a fight.   For example, Andrew Brady told Holland that Plaintiff had come to him, expressed

that he had just been in a fight and asked to hide out.  Holland gathered the written

statements and obtained a warrant for Plaintiff's arrest.  Plaintiff was arrested and charged

with Assault in the Third Degree.

        **d.**        **October 27, 2006 Burglary**

        On October 25, 2006, the owner of the Phoenicia Wine & Liquors Store, Declan

Feehan, reported that someone broke into the store and stole six bottles of Jack Daniels and

four bottles of merlot wine.  Two days later, Officer Ennist responded to a domestic dispute at

the home of Beth Kuntz.  Ms. Kuntz provided a tip that she believed her daughter, Crystal

Cangley, was involved in the burglary.  Holland and McGrath conducted a recorded interview

of Crystal Cangley.  Cangley stated that Plaintiff had walked towards the store with a

screwdriver and returned with four bottles of Jack Daniels and three or four bottles of wine.

Based on this information a warrant was issued for Plaintiff's arrested.

## II.       STANDARD OF REVIEW

        Defendants move for summary judgment pursuant to Rule 56.  Rule 56 of the

Federal Rules of Civil Procedures governs motions for summary judgment.  It is well settled

that on a motion for summary judgment, the Court must construe the evidence in the light

most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d

Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to

any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56( c).  An issue is genuine if the relevant evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  A party seeking summary judgment bears the burden of informing the court of the

basis for the motion and of identifying those portions of the record that the moving party

believes demonstrate the absence of a genuine issue of material fact as to a dispositive

issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish

a prima facie basis for summary judgment, the burden of production shifts to the party

opposing summary judgment who must produce evidence establishing the existence of a

factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported

motion for summary judgment may not rest upon "mere allegations or denials" asserted in his

pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on

conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105,

114 (2d Cir. 1998).  With these standards in mind, the Court will address the pending

motions.

III.    DISCUSSION

   a.   **Probable Cause and Qualified Immunity**

      Defendants move for summary judgment on the grounds that they acted with

probable cause or, in the alternative, they are entitled to qualified immunity.  "The existence

of probable cause to arrest constitutes justification and is a complete defense to an action for

false arrest, whether that action is brought under state law or under § 1983."  Weyant v.

Okst, 101 F.3d 845, 852 (2d Cir.1996) (internal quotation marks and citation omitted); see

also Amore v. Novarro, — F.3d —, —, 2010 WL 2490017, at *8 (2d Cir. 2010).  "Probable

cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's]

knowledge and of which [he] had reasonably trustworthy information were sufficient to

warrant a prudent man in believing that the [suspect] had committed or was committing an

offense.'" Amore, 2010 WL 2490017, at *8 (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct.

223 (1964)).  Probable cause must be evaluated based on totality of the circumstances,

Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007), in light of the facts available to the arresting officer at the time of the arrest. Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997). Police officers may have probable cause to arrest even if the information used as the basis of that arrest is mistaken, as long as it was reasonable for the officer to rely on that information. Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994). Moreover, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from. . . the putative victim or eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citing Miloslavsky v. AES Eng'g Soc'y, 808 F.Supp. 351, 355 (S.D.N.Y.1992), aff'd 3 F.2d 1534 (2d Cir.1993)). Police officers have probable cause to arrest if a person who purports to be the victim has signed a complaint or information charging someone with the crime unless there are facts that cast doubt on the veracity of that complaint. Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). Veracity is assumed and the burden to disprove it falls on the arrestee. Miloslavsky, 808 F. Supp. at 355 (finding that probable cause existed where officers relied on a witness complaint along with disruptive behavior exhibited by plaintiff). Police officers are not required to investigate every source of exculpatory evidence before establishing probable cause to arrest. See Walczyk v. Rio, 496 F.3d 139, 160 (2d Cir. 2007); Gleis v. Buehler, 2010 WL 1647446, at *2 (2d Cir 2010) (summary order) (omission of reference to potentially exculpatory surveillance video in warrant application did not negate probable cause). It is immaterial whether further investigation may cast doubt on the basis for arrest. Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). At the same time, officers "may not disregard plainly exculpatory evidence." Panetta v. Crowley, 460 F.3d 388, 394 (2d Cir. 2006). One such source that officers need not further investigate includes the arrestee's protestations of innocence. Curley v. Village of

Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (finding that the fact that the arrestee's account conflicted with the victim's did not negate probable cause, although witnesses collaborated the arrestee's story).

In situations in which officers have obtained arrest warrants, a presumption arises that the arrest was made with probable cause.  Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007).  The presumption can be overcome, however, if a plaintiff can demonstrate that  a defendant "'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'"  Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir.1993) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)).  In instances of false or omitted information,

> a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of probable cause.  If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred.

Id.  (citations omitted).

Police officers acting in their official capacity are entitled to the defense of qualified immunity for suits arising from § 1983 if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.  The objective reasonableness test is met if officers of reasonable competence could disagree on the legality of the defendant's actions."  Kent v. Katz, 312 F.3d 568, 573 (2d Cir. 2002) (citations omitted); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); Salim v. Proulx, 93 F.3d 86, 89 (2d. Cir. 1996).  This is also referred to as "arguable probable cause."  Amore, 2010 WL 2490017, at *8.  "In deciding whether an

officer's conduct was 'objectively reasonable' for purposes of qualified immunity, we look to the information possessed by the officer at the time of the arrest, but 'we do not consider the subjective intent, motives, or beliefs' of the officer." Id. (quoting Conn. ex rel. Blumenthal v. Crotty, 346 F.3d 84, 106 (2d Cir. 2003)).  Therefore, Defendants are entitled to qualified immunity if it was objectively reasonable for them to believe that they had probable cause, or if reasonable officers could disagree that, under the circumstances, probable cause existed. Kent, 312 F.3d at 573.

      1.       **January 30, 2006 Arson**

           a.      Detective Holland's Liability

Plaintiff argues that Holland failed to adequately investigate the veracity of the witness' accounts (specifically that it was impossible to see the fire from their location on the Plaintiff's porch) and that Detective Holland should have tested the clothes of Crystal Evans and Patrick Wood for accelerants.  Plaintiff further alleges that he was merely attempting to put out the fire.

As discussed, arresting officers are not required to disprove Plaintiff's conflicting account alleging his innocence, see Curley, 268 F.3d at 70, and there is no general obligation for officers to further investigate every potential source of exculpatory evidence, even if there is a possibility that doing so will cast doubt on the basis for the arrest.  Here, Holland had information from three witnesses, each of whom provided consistent, written statements that: (1) Plaintiff told them that he would burn down the trailer, (2) they saw Plaintiff proceed towards the trailer with newspapers in hand, and (3) they saw flames shortly thereafter.  Further, the arrest was not based on the witness statements alone.  Ulster County Fire Investigator, Christopher Worrad, informed Holland that he had ruled out any

accidental causes of the fire.  Moreover, a K-9 indicated the presence of accelerant on

Plaintiff's clothes.  Based on such evidence, Holland had probable cause, or at the very

least, arguable probable cause, to arrest Plaintiff.

 2. McGrath's Liability

 To be liable, supervisory defendants must be personally involved in the claimed

constitutional violation.  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).

Plaintiffs can satisfy the showing of personal involvement by establishing that the defendant

"(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in

supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate

indifference to the rights of the plaintiff by failing to act on information indicating that

unconstitutional acts were occurring."  Id.

 The only involvement that Plaintiff establishes with respect to McGrath in the arson

investigation is McGrath's presence during the interviews of three witnesses.  Plaintiff has not

shown that McGrath directly participated in the arrest, was grossly negligent in supervising

Detective Holland or displayed deliberate indifference by ignoring a known constitutional

violation.  Regardless, the fact that Detective Holland had probable cause means that there

was no constitutional infraction for which McGrath could have been liable.  See City of Los

Angeles v. Heller, 475 U.S. 796, 799 (1986) (finding that it is inconceivable for a police

commissioner to be held liable where officers committed no constitutional violation); see also

Smith v. Edwards, 175 F.3d 99, 107 (2d Cir. 1999) (granting summary judgment to

municipality where officers had probable cause, and thus no constitutional violation

occurred).

3.          **August 23, 2006 Harassment Investigation**

Plaintiff claims that Officer Frisenda failed to investigate Plaintiff's allegation that Ms. Winne had broken into Plaintiff's house and stolen money.  Even assuming Plaintiff's claim were true, Frisenda had no reason to conduct further investigation because any larceny committed by Winne was irrelevant to a finding of probable cause concerning Plaintiff's arrest for harassment.  Plaintiff also argues the Frisenda omitted Winne's alleged drunkenness from his police report, thereby negating a finding of probable cause.  This contention also is irrelevant because drunkenness by itself is not sufficient to cast doubt on a victim's statement.  See Curley, 268 F.3d at 69.

Here, Frisenda responded to a complaint at the motel and obtained a statement from Winne, the purported victim, that Plaintiff threatened her.  While this statement alone likely is enough to support a finding of probable cause (or arguable probable cause) to arrest, Frisenda also had information that the motel owner called the police concerning a confrontation and observed Plaintiff return to the scene where he continued to harass Winne. Based on the totality of the circumstances, Officer Frisenda had probable cause (or arguable probable cause) to arrest and Plaintiff has not alleged sufficient facts that reasonably would have caused Frisenda to doubt the veracity of her complaint.  See Singer, 63 F.3d at 119.

4.          **September 7, 2006 Assault**

Plaintiff was arrested on September 7, 2006 for an assault on Bolton and Pampinella.  Because Holland obtained an arrest warrant, probable cause is presumed. Walczyk, 496 F.3d at 156.  For Plaintiff to overcome the presumption, he must demonstrate that Holland supplied false information or omitted information "necessary to the finding of probable cause."  Soares v. Connecticut, 8 F.3d at 920.  Plaintiff claims that Holland failed to

take the statements of two witnesses and did not allow Plaintiff to make a statement.  Plaintiff also suggests bad faith in his arrest because Holland did not arrest anyone other than Plaintiff for the assault.  Plaintiff further contends that certain witnesses made false statements against him.  For example, Plaintiff argues that Robin Pampinella lied to Holland and that Pampinella and Bolten were "confused" about the location of the attack and the number of men involved because they were drunk.

Even assuming Plaintiff's allegations to be true, they do not negate a finding of probable cause or arguable probable cause.  Probable cause is found based on the statements of the two victims and the witnesses who had spoken to Plaintiff after the fight.  See Curley 268 F.3d at 70.  The victim's positive identifications of Plaintiff, together with the statements of Robin Pampinella and Andrew Brady were sufficient to support probable cause or arguable probable cause.  See Martinez, 202 F.3d at 634.

The facts of Curley are analogous to those of this case.  There the court ruled that police officers had probable cause to arrest plaintiff for assault over plaintiff's objections that he had merely attempted to break up the fight and that the victims were drunk at the time they provided their account to the arresting officer.  See Curley, 268 F.3d at 69.  Although the plaintiff in that case had admitted to the officer that he hit one of the victims, here, Holland had information from Robin Pampimella that Plaintiff had apologized to her for the fight and stated that had he known that the victims were related to her, the fight would not have occurred.  Also, Kristian Pellizari informed Holland that he overheard Plaintiff discussing the incident with a group of men at Plaintiff's trailer, during which Plaintiff admitted that he had hit someone.

Whether Holland arrested anyone else is irrelevant to the question whether there

was probable cause, or arguable probable cause, to arrest Plaintiff.  Moreover, any misinformation provided to Holland does not undermine a finding of probable cause because, in light of the number of witnesses verifying Plaintiff's involvement in the assault, Detective Holland did not have reason to disbelieve the various accounts.  Bernard, 25 F.3d at 103. Further, Plaintiff has failed to overcome the hurdle of rebutting the presumption of probable cause established by the issuance of an arrest warrant.

**5.**  **October 27, 2006 Burglary**

a.  Detective Holland's Liability

Plaintiff argues that probable cause cannot be predicated on the statement of an accomplice.  This assertion is incorrect.  "Uncorroborated testimony from an accomplice is sufficient to support the standard of proof needed for probable cause."  U.S. v. Douglas, 2006 WL 3155065, at *2 (S.D.N.Y. 2006) (citing Matter of Extradition of Atta, 706 F.Supp 1032, 1051 (E.D.N.Y. 1989), aff'd, Ahmad v. Wigen, 910 F.2d 1063 (2d Cir. 1990)) (finding probable cause where arresting officer relied on the uncorroborated word of a fellow criminal participant).  A co-accomplice may be particularly reliable because of their unique position to possess knowledge of information connected with the crime.  See U.S. v. Gaviria, 805 F.2d 1108, 1115 (2d. Cir. 1986).

Here, Detective Holland's recorded interview with Plaintiff's accomplice, Cangley, provided a sufficient basis to establish probable cause to arrest Plaintiff for burglary. Cangley indicated that Plaintiff had brought her to the Phoenicia Wine & Liquor Store, that Plaintiff had walked towards the store with a screwdriver and returned with four bottles of Jack Daniels and three or four bottles of wine.  During the burglary, Cangley sat on the steps of a library building a few doors away from the liquor store.  Cangley's statements were

corroborated by the liquor store owner, Declan Feehan, and the store employees who verified that six bottles of Jack Daniels and four bottles of wine had been stolen and that the lock had been pried open in a way that would be consistent with the use of a screwdriver.

Plaintiff alludes to "contracts" that Cangley had with the Police department that allowed her to avoid arrest for domestic violence in exchange for her allegedly false statements. Plaintiff offers no evidence that any such "contract" existed. Assuming, arguendo, that such contracts do exist, the mere fact that Cangley may have been "rewarded for the act of giving a statement does not, by itself, suggest that the contents were false." See Daniels v. D'Aurizo, 564 F.Supp.2d 194, 198 (W.D.N.Y. 2008). Furthermore, because Holland obtained a warrant, there is a presumption that Detective Holland had probable cause. Plaintiff has not shown facts sufficient to rebut this presumption.

b.        McGrath's Liability

McGrath's only involvement in the burglary arrest was interviewing Cangley, which is insufficient to sustain a §1983 claim against a supervisory officer. See Mura v. Erie County Sheriff Dept., 2005 WL 615754, at *5 (W.D.N.Y. 2005) (dismissing § 1983 claim against supervisory sheriff where there was no evidence the sheriff was present during the arrest or participated in the decision to arrest); see also Provost v. City of Newburgh, 262 F.3d 146, 156 (2d. Cir. 2001) (dismissing § 1983 claim because plaintiff failed to demonstrate defendant lieutenant was aware of facts that made the arrest unconstitutional). There is insufficient evidence that McGrath directly participated in the arrest, was aware of any alleged constitutional violation and failed to take corrective action, maintained a policy or custom of false arrest, malicious persecution or false imprisonment or was grossly negligent in his supervision of Holland. Additionally, because probable cause existed for Plaintiff's

arrest, there was no constitutional violation and, therefore, there can be no liability upon McGrath.

      **b.**    <u>**Municipal Liability**</u>

      A municipality cannot be held liable for an employee's wrongful actions under doctrine of respondeat superior.  <u>Monell v. New York City Dep't of Social Serv.</u>, 436 U.S. 658, 691-92 (1978).  A municipality can be held liable under § 1983 for the actions of its employees pursuant to official unconstitutional policies or customs.  <u>Id.</u> at 691.  Failure to train police officers that "amounts to deliberate indifference to the rights of persons with whom the police come into contact" may serve as the basis for § 1983 liability.  <u>Canton v. Harris</u>, 489 U.S. 378, 388 (1989).  The need for this training must be "obvious," and the lack thereof must be "likely to result in the violation of constitutional rights."  <u>Id.</u> at 390.

      Plaintiff does not argue that the Town of Shandaken Police had an official policy or custom that deprived him of his constitutional rights.  Instead, he claims that specific employees failed to investigate his arrest charges adequately and arrested him on the basis of false statements provided by witnesses.  As an initial matter, Plaintiff has failed to identify any constitutional violation.  As previously discussed, all of Plaintiff's arrests were supported by probable cause.

      Even assuming a constitutional violation, there can be no liability on behalf of the Town of Shandaken without evidence that the Town condoned such behavior pursuant to an official policy or practice.  Construed liberally, Plaintiff's complaint can be interpreted to allege a general failure to train officers.  Nonetheless, Plaintiff's claim fails because Plaintiff has not provided sufficient evidence suggesting a failure to train, that the need for any such training was obvious, or that the lack of any training resulted in constitutional violations.

c.     **Claims Against the Assistant District Attorneys**

Plaintiff has named several Assistant District Attorneys ("ADAs") for their prosecutorial activities associated with the above charges.  Plaintiff alleges that the ADAs failed to properly investigate the witnesses' allegedly false statements and proceeded with their cases knowing that Plaintiff was innocent.

Prosecutors enjoy absolute immunity from §1983 suits for activities that are "intimately associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  Protected activities include initiating a prosecution, id., deciding precisely what charges will or will not be made, and performance of litigation-related duties. Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d. Cir. 1993).  Absolute immunity attaches unless prosecutors "proceed[ ] in the clear absence of all jurisdiction."  Barr v. Adams, 810 F.2d 358, 361 (2d. Cir. 1987).  To the extent that a prosecutor is eligible for absolute immunity, the prosecutor's alleged improper motive or subjective state of mind does not negate the prosecutor's entitlement to absolute immunity.  Shmueli v. City of New York, 424 F.3d 231, 237 (2d. Cir. 2005).  "A prosecutor is also entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information.  Although such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages."  Id. (internal quotations and citation omitted).

Here, Plaintiff claims that ADA Blackmon failed to investigate charges before presenting them to the Ulster County Grand Jury.  The presentation of evidence to the Grand Jury is a prosecutorial function entitled to absolute immunity.  Fine v. City of New York, 529 F.2d 70, 74 (2d. Cir. 1975); Phelan v. Sullivan, 2010 WL 2948217, at *5 (N.D.N.Y. 2010).

Contrary to Plaintiff's claim, there is no general obligation to investigate the veracity of

witnesses' statements before deciding to prosecute because even the knowing use of false

testimony does not preclude absolute immunity.  Shmueli, 424 F.3d at 237.  Plaintiff also

alleges a constitutional violation because the ADAs knew that they could not secure

successful convictions.  As noted, however, subjective intent is immaterial.  Id.; see also

Cooper v. Mansiello, F.Supp.2d, 2000 WL 432813, *2 (W.D.N.Y. 2000) (ultimate success of

prosecution is immaterial in determining absolute immunity).  For the foregoing reasons,

Defendants' decisions to prosecute Plaintiff fall within the conduct "intimately associated with

the judicial phase of the criminal process."  See Ying Jing Gan, 996 F.2d at 530.

### d.    Claims for the Intentional Infliction of Emotional Distress

Plaintiff asserts claims for the intentional inflict of emotional distress.  In order to

establish a cause of action for intentional infliction of emotional distress, Plaintiff must prove

four elements: (1) that defendant engaged in extreme and outrageous conduct; (2) that

defendant did so intentionally; (3) that defendant's conduct caused the distress; and (4) that

plaintiff suffered severe emotional distress.  See Christenson v. Gutman, 249 A.D.2d 805 (3d

Dept. 1998).  The conduct in question must be regarded as atrocious and utterly intolerable

in a civilized society.  See Klinge v. Ithaca College, 235 A.D.2d 724, 727 (3d Dept. 1997).

Here, Defendants' conduct does not constitute the extreme and outrageous

conduct necessary to sustain an intentional infliction of emotional distress claim.  This is

particularly true because Defendants acted with probable cause (or arguable probable

cause) to arrest and/or prosecute Plaintiff and it was within the ADAs' discretion to prosecute

Plaintiff's charges.  Moreover, Plaintiff's claims for intentional infliction of emotional distress

are barred by the one-year statute of limitations.  The date of Plaintiff's latest arrest on which

he bases his intentional infliction of emotional distress claim is October 27, 2006.  Because Plaintiff did not bring his claim until March 13, 2009 (see Dkt #1), his intentional infliction of emotional distress claim is time-barred.

### e.    Appeal from Magistrate Judge's June 9, 2010 Order

Plaintiff also appeals Magistrate Judge Randolph F. Treece's denial of his Motion for leave to Amend his Complaint to permit the joinder of twenty new defendants.  Pursuant to the initial Scheduling Order dated August 21, 2009, the final date to amend pleadings was set as October 22, 2009 (Dkt. No. 34).  Plaintiff moved for an extension of time.  This motion was denied (Dkt. No. 51).  Nonetheless, on May 28, 2010, Plaintiff filed a Motion to Amend his Complaint to 1) add false arrest claims against Holland and McGrath; 2) join additional officers and agencies for false arrests, malicious prosecution and other claims for various incidents occurring between 2003 and 2009; and 3) add claims against ADAs and several agencies for incidents surrounding Plaintiff's March 4, 2008 arrest for Sexual Abuse in the First Degree.

### 1.    Timeliness

Leave to amend should be freely granted unless there is prejudice to the opposing party, undue delay of the proceedings, or futility.  See Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d. Cir. 2000).  Additionally, pursuant to Rule 21, the court may allow a party to be added "at any time, on just terms."  Fed. R. Civ. P. 21.  Although Rule 21 itself does not set a deadline for the date that motions are due, "timing of the motion may influence the court's discretion in determining to grant it.  Courts typically will deny a request that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action."  City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir.

2006).

In determining whether granting a motion to amend will prejudice defendants, courts generally consider whether "the assertion of the new claim or defense would . . . significantly delay the resolution of the dispute . . ." See Monahan, 214 F.3d at 284.  The Court agrees with the Magistrate Judge that allowing Fudge to add twenty additional defendants, after discovery has been completed and summary judgment motions were pending, would cause undue prejudice to the Defendants because each defendant would need to be served with a Summons and Amended Complaint, significant additional discovery would have to be undertaken, and the pending motions for summary judgment revised to address the new matters.

Furthermore, Plaintiff has failed to show good cause for a belated filing of his Amended Complaint.  See Sokol Holdings, Inc. v. BMB Munai, Inc., 2009 WL 3467756, at *2 ("Where a scheduling order fixes a deadline for asserting additional claims, a party seeking leave to amend its pleadings after the deadline must show good cause for modification).  In the scheduling order, the Magistrate Judge set the final date to amend pleadings or join parties as October 22, 2009.  Without explaining why he was unable to comply with this deadline, Plaintiff filed the instant motion more than six months later.  The claims that Plaintiff seeks to add are based on events that occurred between 2003 and 2009.  Plaintiff does not demonstrate diligence on his behalf or show sufficient reason why the applicable deadline could not reasonably have been met.  The Court finds that there is no reason the proposed allegations could not have been included within the original complaint on March 13, 2009 or in an amended pleading filed before the October 2009 deadline.

### 2.  __Futility__

Granting the amendment would also be futile with regard to the local agencies (including the Department of Probation, Department of Child Protective Services, Department of Social Services, etc.) and Town of Shandaken because the proposed amendment does not state sufficient grounds upon which relief may be granted.  An amendment need not be allowed if it does not state a claim upon which relief can be granted.  Doughterty v. Town of N. Hempstead, 282 F.3d 83, 88 (2d Cir. 2002).

Here, permitting the amendment would be futile for two reasons.  First, as discussed, a §1983 claim may not be sustained based on a respondeat superior theory of liability.  Monell, 436 U.S. at 690.  Plaintiff has not identified any unconstitutional policies or practices officially promulgated or practiced by these agencies.  Furthermore, Plaintiff has not alleged that these policies were causally linked to, or the "moving force" behind, any deprivation of his rights.  Polk County v. Dodson, 454 U.S. 312, 326 (1981).

Second, as the Magistrate Judge noted, Plaintiff has failed to state the ways that the proposed defendants were personally involved in any unconstitutional conduct.   Mere awareness of events is not sufficient to establish liability under § 1983.  See Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989).  Even assuming that Plaintiff's arrests and convictions were unconstitutional and assuming that the agencies knew about them, Plaintiff must allege that the agencies authorized arrests or that there were circumstances indicating deliberate indifference.  Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).  Plaintiff has not alleged facts in his amended complaint indicating that the municipalities, as opposed to individual employees, had knowledge or displayed deliberate difference to his particular situation.

Additionally, some of Plaintiff's claims in his proposed amendment are time-barred. Plaintiff seeks to add false arrest charges against McGrath and Holland based on incidents that occurred from 2003 to 2009.  The Court agrees with the Magistrate Judge's analysis on the limitations period.  To the extent that Plaintiff seeks to add claims based on incidents that occurred before March 13, 2006, they are barred by the three-year statute of limitations. Moreover, the fact that Fudge pled guilty to the DWI charge precludes his § 1983 claims with respect to that charge.  See Heck v. Humphrey, 512 U.S. 477, 481 (1994).  In order to recover damages in a § 1983 claim for actions whose unlawfulness would render a conviction or sentence invalid, a plaintiff must "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . ." Id. at 486-87.  To permit the instant motion would permit a convicted criminal defendant to collaterally attack the conviction through a civil suit, which the Supreme Court has declined to allow.  Id. at 485.

### C. **Collateral Estoppel**

After reviewing the record, the Court also agrees with the Magistrate Judge's dismissal of Fudge's proposed amendments relating to his March 4, 2008 arrest on the basis of collateral estoppel.  The issues that Plaintiff seeks to add were previously litigated on the merits and dismissed.  Absent any evidence that Plaintiff did not have a full and fair opportunity to be heard, the Court concurs that he is barred from re-litigating them.

### IV.     CONCLUSION

For the foregoing reasons, Magistrate Judge Treece's June 9, 2010 Order is AFFIRMED, Defendants' motions for summary judgment are GRANTED and Plaintiff's

Complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.

Dated:August 16, 2010

Thomas J. McAvoy
Senior, U.S. District Judge